BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (SBN 77785)
Jenelle W Welling, (SBN 209480)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
925.945.0200 (telephone)
925.945.8792 (facsimile)

BAKER LAW PC
G. Richard Baker (SBN 224003)
524 Union Street, #213
San Francisco, CA 94133
415.295.4814 (telephone)
800.886.6556 (facsimile)
richard@bakerlawpc.com

MIANO LAW PC
Bert J. Miano (SBN 218934)
Post Office Box 59268
Birmingham, AL 35259
205.714.7199 (telephone)
205.714.7177 (facsimile)

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA TORRES, GABRIEL ROJAS, and IAN KERNER, individually and on behalf of all others similarly situated, ,<br><br>Plaintiffs,<br><br>v.<br><br>JC PENNEY CORPORATION, INC.; and JC PENNEY COMPANY, INC., ,<br><br>Defendants. | Civil Action Case No. 12-01105-RS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>CLASS ACTION<br><br>Date: 2/21/13<br>Time: 1:30 p.m.<br>Courtroom 3<br>Judge: Richard Seeborg |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..................................................................................................................2

II. LEGAL STANDARDS ........................................................................................................3

III. NO SAFE HARBOR PROTECTS JCPENNEY'S DECEPTIVE CONDUCT .....................3
    A. JCPenney Fails to Establish that the FTC Guidelines Constitute "Legislation" which can Establish a Safe Harbor ......................................................3
    B. Even If the FTC Guidelines are Accorded the Force of Law, they do not Expressly Authorize JCPenney to Coat Precious Metals with Rhodium Without Disclosing it....................................................................................5
        1. No safe harbor may be implied from provisions concerning the composition of a jewelry article ...............................................................5
        2. JCPenney does not argue that the National Stamping Act provides a safe harbor, but no harbor may be implied by that Act in any event......................................................................................................7
        3. Business & Professions Code Section 22179 also provides no safe harbor ..............................................................................................................7

IV. PLAINTIFFS ADEQUATELY PLEAD A DUTY TO DISCLOSE .....................................7

V. PLAINTIFFS PROPERLY PLEAD EACH PRONG OF THE UCL ..................................11
    A. The Court Already Upheld Plaintiffs' "Unfair" Claims............................................11
    B. The Validity of Plaintiffs' "Unlawful" Allegations is Beyond Dispute...................11
    C. Plaintiffs' Claims Based on "Fraudulent" Conduct are Adequately Pleaded ........................................................................................................................12

VI. PLAINTIFFS' FAL CLAIM SHOULD GO FORWARD ...................................................13

VII. CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  566 U.S. 652 (2009) .................................................................................................................. 3

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
  168 F.3d 967 (7th Cir. 1999) .................................................................................................... 5

*Baker v. Aegis Wholesale Corp.*,
  No. C-09-5280, 2010 WL 2853915, (N.D. Cal. Jul. 21, 2010) ................................................ 11

*Bardin v. Daimlerchrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ................................................................................................ 13

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal.4th 182 (1999) ...................................................................................................... 3, 5, 8

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (2011) ................................................................................ 9, 11, 12, 13

*Davis v. HSBC Bank*,
  691 F.3d 1152 (9th Cir. 2012) .................................................................................................. 3

*F.T.C. v. Mary Carter Paint Co.*,
  382 U.S. 46 (1965) .................................................................................................................... 5

*Jordan v. Paul Financial, LLC*,
  745 F. Supp.2d 1084 (N.D. Cal. 2010) ................................................................................... 11

*Kasky v. Nike, Inc.*,
  27 Cal.4th 939 (2002) ............................................................................................................. 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................................................. 3

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012) ................................................................................................. 6

*Kraus v. Trinity Management Services*,
  23 Cal.4th 116 (2000) ............................................................................................................. 12

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003). ................................................................................................ 10

*M.G. Chamberlan & Co. v. Simpson*,
  173 Cal. App. 2d 263 (1959) .................................................................................................... 9

*McKell v. Washington Mut., Inc.*,
  142 Cal. App. 4th 145 (2006) ................................................................................................. 10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINTCASE NO.: 12-01105-RS
68011

*Mirkin v. Wasserman,*
  5 Cal. 4th 1082 (1993) .................................................................................................................. 9

*Pareto v. F.D.I.C.,*
  139 F.3d 696 (9th Cir. 1998) ....................................................................................................... 9

*Parks Sch. Of Bus., Inc. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ....................................................................................................... 3

*People ex. rel. Dep't of Motor Vehicles v. Cars 4 Causes*,
  139 Cal. App. 4th 1006 (2006) ................................................................................................. 10

*People v. McKale*,
  25 Cal.3d 626 (1979) ................................................................................................................ 11

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
  17 Cal.4th 553 (1998) ............................................................................................................... 11

*Warner Constr. Corp. v. City of Los Angeles*,
  2 Cal. 3d 285 (1970) ........................................................................................................ 8, 9, 10

*Yamaha Corp. v. State Bd. of Equalization,*
  19 Cal.4th 1 (1998) ..................................................................................................................... 4

**Statutes**

Bus. & Prof. Code § 13520 ............................................................................................................. 6

Bus. & Prof. Code § 17500 ........................................................................................................... 13

Bus. & Prof. Code § 22175 ............................................................................................................. 7

Bus. & Prof. Code § 22179 ............................................................................................................. 7

15 U.S.C. § 41 ................................................................................................................................. 4

15 U.S.C. § 57a(a)(1)(A) ................................................................................................................ 4

15 U.S.C. § 294 ............................................................................................................................... 7

15 U.S.C. § 295. .............................................................................................................................. 7

15 U.S.C. § 297 ............................................................................................................................... 7

**Other Authorities**

16 C.F.R. § 1.5................................................................................................................................. 4

16 C.F.R. § 17.................................................................................................................................. 4

16 C.F.R. § 23.6(b).......................................................................................................................... 6

16 CFR § 23.4.................................................................................................................................. 5

iii

16 C.F. R. § 23.6(d) .................................................................................................................. 6

16 C.F.R § 57a(a)(1)(B) ............................................................................................................ 4

16 C.F.R. § 57a(b)(1) ................................................................................................................ 4

## I. INTRODUCTION

Plaintiffs bring this putative class action against JCPenney for failing to disclose the use of a surface coating of rhodium on the white gold and sterling silver fine jewelry that it sells. The rhodium coating makes the jewelry appear to be a bright, shiny white color when the underlying metal actually has a much less desirable yellow, off-white or dingy grey color. In addition to failing to disclose the altered appearance, JCPenney also fails to disclose that the coating will wear off, revealing the unexpected and undesired yellow, off-white, or dingy grey color of the underlying metals. To retain the original shiny white appearance of the jewelry, consumers must pay out of pocket to re-coat it when the coating wears off.

Plaintiffs' Second Amended Complaint ("SAC") adequately pleads that JCPenney's conduct violates three statutes meant to protect consumers from such sharp practices: (1) the Consumers Legal Remedies Act ("CLRA"); (2) the Unfair Competition Law ("UCL"); and (3) the False Advertising Law ("FAL"). Indeed, the Court previously upheld Plaintiffs' claims under the "unfair" prong of the UCL. *See* Oct. 1, 2012 Order (Doc. No. 32) ("Order") at 6:24-25 ("[P]laintiffs have pled facts which may satisfy the three elements of the traditional balancing test with respect to allegations relating to rhodium[.]"). For the remainder of Plaintiffs' rhodium claims[1], the Court desired greater specificity. *Id*., at 6:4-5 (for "unlawful" claims, Plaintiffs must plead facts showing violation of predicate statute(s)); at 7:18-25 (for "fraudulent" claims, Plaintiffs must set forth particular facts demonstrating a duty to disclose); at 9:13-16 (for FAL "misleading" claims, Plaintiffs must plead that defendant knew or should have known its advertising was misleading).

Because Plaintiffs' SAC provides *exactly* what the Court directed, JCPenney relies heavily on a new argument—that the FTC Guidelines allow it to mislead consumers about its use of rhodium. Though beset by many flaws, the most glaring defect in this argument is that for a "safe harbor" to shield JCPenney from liability, the cited provision must *clearly permit* the challenged conduct. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal.4th 163, 182-83

---

[1] Consistent with the Court's Order, Plaintiffs have not re-alleged claims based on geographic origin, diamond quality or other non-rhodium related violations of law.

(1999) ("*Cel-Tech*") ("To forestall an action under the unfair competition law, another provision must . . . clearly permit the conduct."). The FTC Guidelines do not clearly permit JCPenney to conceal that it uses rhodium to make fine jewelry appear more valuable. Accordingly, JCPenney's motion must be denied.

## II. LEGAL STANDARDS

The Court's focus on a Rule 12(b)(6) motion is the legal sufficiency of the claims alleged. *Parks Sch. Of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). For a claim to be sufficient, the facts supporting the claim need not be highly detailed, but rather simply be enough to show a claim is "plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Moreover, any and all such inferences must be made in Plaintiffs' favor. *Twombly*, 550 U.S. at 570.

Claims sounding in fraud have a heightened pleading requirement under Rule 9(b) (*Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009)), but JCPenney does not challenge the sufficiency of Plaintiffs' fraud-based allegations, which the Court previously found adequate. Order at 8:9-11.

## III. NO SAFE HARBOR PROTECTS JCPENNEY'S DECEPTIVE CONDUCT

### A. JCPenney Fails to Establish that the FTC Guidelines Constitute "Legislation" which can Establish a Safe Harbor

The threshold question raised by JCPenney's argument is whether the FTC Guidelines can be accorded the weight of law so as to be considered "legislation" – because only legislation can provide a safe harbor. *Cel-Tech*, 20 Cal.4th at 182 ("When *specific legislation* provides a safe harbor, plaintiffs may not use the general unfair competition law to assault that harbor.") (Emphasis added.) JCPenney glosses over this essential first step, generically citing to *Davis v. HSBC Bank*, 691 F.3d 1152, 1165-67 (9th Cir. 2012), for the unremarkable proposition that regulations may create safe harbors. Defs' Mem. at 11:23-25. JCPenney does not establish,

3

1 however, that the FTC Guidelines are regulations (which they are not) or establish that they should,
2 nonetheless, be accorded the weight of law so as to provide a safe harbor.
3       The FTC Guidelines are not regulations, let alone regulations that should be deemed
4 legislative or even quasi-legislative for purposes of a safe harbor analysis. First, the FTC
5 Guidelines themselves declare that they are merely "interpretations" of laws to provide "guidance"
6 to the public. 16 C.F.R. § 1.5. *See also* http://ftc.gov/os/2012/06/120622jewelryguidesfrn.pdf at 2
7 fn. 1 ("[These jewelry] guides are administrative interpretations of the law; they do not have the
8 force of law . . . ."). Second, the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq*, itself
9 differentiates between the promulgation of industry guidance and rule making. *Compare* 15 U.S.C.
10 § 57a(a)(1)(A) *with* § 57a(a)(1)(B). To establish regulations, the Commission must follow a formal
11 notice, comment, hearing, and rule making record. *Id*., § 57a(b)(1). No such formality is required
12 for the Commission to promulgate industry guidance. *Id*.  Moreover, a violation of a regulation
13 adopted pursuant to Section 57a is a violation of the law. *Id.*, § 57a(a)(1)(B). Industry guidance, on
14 the other hand, provides "the basis for voluntary and simultaneous abandonment of unlawful
15 practices by members of the industry . . . and *may* result in corrective action by the commission[.]"
16 16 C.F.R. § 17 (emphasis added). Due in large part to the differences in the procedural processes,
17 agency interpretations are not afforded the same weight as statutory pronouncements or
18 regulations. *See Yamaha Corp. v. State Bd. of Equalization*, 19 Cal.4th 1, 7 (1998)("An agency
19 interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by
20 the courts; however, unlike quasi-legislative regulations adopted by an agency to which the
21 Legislature has confided the power to 'make law,' and which, if authorized by the enabling
22 legislation, bind this and other courts as firmly as statutes themselves, the binding power of an
23 agency's *interpretation* of a statute or regulation is contextual[.]" (emphasis in original). As
24 indicated by the Guidelines and the FTC itself, the industry guidance upon which JCPenney relies
25 is distinct from, and does not carry the weight of, statutes or regulations, and thus, cannot form a
26 safe harbor from Plaintiffs' claims.
27       Indeed, two courts, including the United States Supreme Court, have stated that the FTC
28 Guidelines do not carry the weight of law. *F.T.C. v. Mary Carter Paint Co.*, 382 U.S. 46, 47-48

4

(1965) (stating, with respect to deceptive advertising guidelines now found in 16 C.F.R. Part 14, "These, of course, were guides, not fixed rules as such, and were designed to inform businessmen of the factors which would guide Commission decision."); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999)("The federal provision [on deceptive pricing as it relates to jewelry], found among a series of industry guides by the FTC, does not carry equivalent authoritative weight [as a statute]."). JCPenney cites no authority affording 16 C.F.R. sections 23.4(d) or 23.6(b), the FTC's guidelines for alloy tolerances, the force and effect of law. In sum, only legislation can create a safe harbor. *Cel-Tech*, 20 Cal.4th at 182. The FTC Guidelines for the jewelry industry are not legislation. Therefore, they can provide no safe harbor for JCPenney's deceptive advertising.

**B.    Even If the FTC Guidelines are Accorded the Force of Law, they do not Expressly Authorize JCPenney to Coat Precious Metals with Rhodium Without Disclosing it**

**1.    <u>No safe harbor may be implied from provisions concerning the composition of a jewelry article</u>**

JCPenney points to the tolerance limits expressed in the FTC Guidelines for marking an item as "gold" or "sterling silver" and argues that such guidelines permit it to fail to disclose rhodium coating so long as that coating does not cause the item to exceed the listed tolerances. Defs' Mem. at 11-12. JCPenney conveniently blurs the careful distinction the FTC Guidelines, as well as the National Stamping Act provisions, make between the **composition** of a jewelry article versus any **coatings** applied to the surface of a jewelry article. Once that purposeful distinction is respected, it is clear that the FTC Guidelines regarding tolerance limits provide no safe harbor to claims premised on surface coatings.

The FTC Guidelines carefully distinguish between the composition *of* jewelry articles versus the coating *on* those articles. 16 CFR § 23.4. The Guidelines provide that it is "unfair or deceptive to misrepresent the presence of gold or gold alloy **in** an industry product, . . . or manner of application of any gold or gold alloy plating, covering, or **coating on any surface** of an industry product or part thereof." *Id*. (emphasis added). The distinction between the composition of the

5

1  article itself versus any coating on the surface of the article is maintained throughout the
2  guidelines. For instance, in further discussing misrepresentations about gold content, the FTC
3  advises that a seller may not use the word "gold" or any abbreviation, without qualification, if the
4  product is not "composed throughout" of fine (24 karat) gold. 16 C.F.R. § 23.4(b)(1). Similarly, a
5  seller may not use the word "gold" when an article is not "composed throughout" of gold or gold
6  alloy but rather is surface-plated or coated with gold alloy unless it is made clear that the gold alloy
7  is solely on the surface. 16 C.F.R. § 23.4(b)(3). Similar distinctions are made between sterling
8  silver products and products coated in silver. *Compare* 16 C.F.R. § 23.6(b) *with* § 23.6(d).

9  Because tolerance limits relate solely to the composition of an article, those limits cannot be said to "clearly permit" JCPenney to alter the appearance of its jewelry by adding an undisclosed surface coating. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1379 (2012). In *Klein*, plaintiffs alleged that Chevron's sale of non-temperature adjusted fuel violated the UCL. *Id.*, at 1376. In response, Chevron contended that Business & Professions Code Section 13520, which requires that, in transactions involving the sale of 5,000 or more gallons of motor fuel, the seller must offer the fuel on a specific "temperature adjusted gallonage" rate, provided a safe harbor from plaintiffs' claims because, by establishing a 5,000 threshhold, the legislature necessarily considered and rejected regulating sales of fuel below that threshold. *Id.*, at 1378-79. The court rejected Chevron's attempt to create a safe harbor. Because the statute by its terms "only applies to transactions involving 5,000 or more gallons of motor fuel," the court reasoned, it has "no application to transactions involving lesser quantities of motor fuel." *Id.*, at 1379. The court reiterated that safe harbors cannot be implied, but rather a safe harbor must explicitly prohibit liability for the alleged conduct. *Id*. This Court should similarly reject JCPenney's offer to imply a safe harbor from claims premised on undisclosed coatings on the surface of jewelry based on provisions relating to the composition of jewelry.

### 2. JCPenney does not argue that the National Stamping Act provides a safe harbor, but no harbor may be implied by that Act in any event

The National Stamping Act also differentiates between the composition of an article versus a coating on the surface of an article. For instance, Section 294 prohibits importing or exporting any merchandise "made in whole or in part" of gold or silver, or an alloy thereof, which has been stamped with a mark indicating that the gold or silver "**in** such article" is of greater degree of fineness than the actual fineness. 15 U.S.C. § 294 (emphasis added). Section 297, on the other hand, focuses on merchandise "made in whole or in part" of an inferior metal, but having gold or silver "deposited or plated **thereon**". 15 U.S.C. § 297 (emphasis added). Thus, when the National Stamping Act allows for a "permissible tolerance of three parts per thousand" for merchandise "made in whole or in part" of gold and stamped as a particular fineness of gold, it is talking about the **composition** of the article itself and not any **coating** thereon. 15 U.S.C. § 295. This is plain not only from the structure of the Act as a whole, but also from the language of Section 295. Section 295 uses phrases like "made in whole or in part" and speaks of the fineness of the gold "contained **in**" an article. *Id*. (emphasis added). Coating or plating is not even mentioned.

### 3. Business & Professions Code Section 22179 also provides no safe harbor

JCPenney also cites Business & Professions Code Section 22179 as providing a safe harbor. Defs' Mem. at 13 fn. 3. Similar to the FTC Guidelines and the National Stamping Act, however, Section 22179 also speaks of the fineness of gold "contained **in**" any article. *Id*. (emphasis added). As such, it does not address coatings applied to the surface of jewelry articles. Moreover, by its own terms, it applies only to gold and its alloys. Bus. & Prof. Code § 22175. Thus, JCPenney's deceptive practice of coating sterling silver with rhodium can find no safe harbor in this statute.

### IV. PLAINTIFFS ADEQUATELY PLEAD A DUTY TO DISCLOSE

JCPenney repackages its safe harbor argument in an effort to dismiss Plaintiffs' CLRA claims. As demonstrated above, there is no safe harbor here. Even if the FTC's interpretation could be considered quasi-legislative, the FTC Guidelines regarding the composition of jewelry articles have no bearing on claims relating to undisclosed coatings on the surface of jewelry articles. Thus,

7

1    JCPenney is incorrect when it argues that "Plaintiffs' failure to plead that JCPenney is out of
2    compliance with the FTC Guides [regarding the composition of jewelry articles] means JCPenney
3    has no duty to disclose rhodium coating." Defs' Mem. at 19:7-9. The two subjects have nothing to
4    do with one another. Indeed, JCPenney urged the FTC to add specific guidelines declaring it to be
5    unfair and deceptive to fail to disclose a surface-layer application of rhodium (SAC ¶ 19).  There
6    would have been no reason for it to do so if the pre-existing guidelines about jewelry **composition**
7    already approved such conduct.
8        Moreover, as *Cel-Tech* and its many progeny make clear, "There is a difference between (1)
9    not making an activity unlawful, and (2) making that activity lawful." *Id*., 20 Cal.4th at 182-83.
10   JCPenney starts from the premise that the FTC Guidelines do not prohibit JCPenney's conduct, or,
11   stated in the language of *Cel-Tech*, do not make the undisclosed use of rhodium unlawful.
12   Therefore, JCPenney reasons, it has no duty to disclose the use of rhodium to alter the appearance
13   of the fine jewelry it sells. JCPenney is incorrect.
14       First, the FTC Guidelines *do* prohibit JCPenney's conduct. As stated in 16 C.F.R. Section
15   23.1, "It is unfair or deceptive to misrepresent the . . . color . . . of an industry product." JCPenney
16   misrepresents the color of the jewelry by describing it as "white" when the metal underlying the
17   rhodium coating is not white, but rather yellowish, dull grey or off-white, and it can and will wear
18   off. SAC ¶¶ 38, 75. JCPenney also misrepresents the color by providing pictures or in-person
19   visuals in which the jewelry appears bright, shiny and white. *Id*.
20       Second, California law imposes a duty to disclose even in the absence of a statutory
21   mandate to do so (or in the absence of an agency interpretation that such disclosure should take
22   place). In the absence of a fiduciary relationship, a failure to disclose a fact can constitute
23   actionable fraud or deceit in three instances: (1) when the defendant has exclusive knowledge of
24   material facts not known or reasonably accessible to the plaintiff; (2) when the defendant actively
25   conceals a material fact from plaintiff; and (3) when the defendant makes partial representations
26   that are misleading because some other material fact has not been disclosed. *Warner Constr. Corp.*
27   *v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970) ("*Warner*"); *Collins v. eMachines, Inc*., 202 Cal.
28   App. 4th 249, 255 (2011)(citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997));.

1 Plaintiffs satisfy the first prong of this test, in alleging that JCPenney makes representations
2 about its jewelry, such as describing it as "14kt white gold" or as "sterling silver" and "Metal color:
3 white" (*see, e.g.*, SAC ¶¶ 22, 32), but does not disclose the use of a rhodium coating which
4 materially qualifies the facts disclosed. SAC ¶¶ 23, 33; *Warner*, 2 Cal. 3d at 294; *M.G.*
5 *Chamberlan & Co. v. Simpson*, 173 Cal. App. 2d 263, 275-76 (1959) ("Where there is a duty to
6 disclose, the disclosure must be full and complete, and any material concealment or
7 misrepresentation will amount to fraud. Having undertaken to make representations with respect to
8 the facts, defendants were bound by law to make an honest statement and not conceal any fact
9 within their knowledge"). Plaintiffs allege the use of a rhodium coating is material to them not only
10 because it concealed the true color of the jewelry, making it appear more valuable (SAC ¶¶ 17, 42),
11 but also because the coating wears off, revealing an unexpected and undesirable contrast between
12 the shiny rhodium and the dull, yellow gold beneath (SAC ¶¶ 27, 75). Plaintiffs specifically allege
13 that the use of rhodium is a material fact such that if they had known about the rhodium coating,
14 they either would not have purchased the items or would have paid less for them. SAC ¶¶ 29, 34;
15 *Mirkin v. Wasserman,* 5 Cal. 4th 1082, 1093 (1993) (information is material if a reasonable
16 consumer would have behaved differently had it been disclosed). Plaintiffs' allegations properly
17 and sufficiently invoke the first *Warner* duty to disclose.
18 Alternatively, Plaintiffs also adequately plead the second *Warner* duty to disclose, which
19 imposes such a duty , where a defendant has exclusive knowledge of a material fact and the
20 material fact is not reasonably discoverable by the plaintiff, ***regardless*** of what affirmative
21 statements the defendant made. *Warner*, 2 Cal. 3d at 294 (emphasis added). Plaintiffs convincingly
22 plead both aspects of the second *Warner* disclosure duty. Plaintiffs plead that JCPenney had
23 exclusive knowledge of the use of a rhodium coating. SAC ¶¶ 41, 65. Specifically, Plaintiffs allege
24 that JCPenney dictated in internal specification sheets that rhodium be used. SAC ¶¶ 24, 35. It is a
25 reasonable inference, and one that must be made in Plaintiffs' favor in resolving this motion
26 (*Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998)), that Plaintiffs did not have access to
27 internal corporate documents. Moreover, Plaintiffs specifically allege that they did not know about
28

1  JCPenney's use of rhodium or have access to JCPenney's internal corporate documents. SAC ¶¶
2  26, 34, 41.
3        Plaintiffs also allege that JCPenney's use of rhodium is not something that is reasonably
4  discoverable by consumers at the time of sale. SAC ¶ 65. All consumers see at the time of purchase
5  is the bright, white shine. SAC ¶ 22. It is not until months later when the thin coating wears off that
6  the consumer realizes that the item had been altered to appear bright white. SAC ¶ 27. Thus,
7  Plaintiffs allege both aspects giving rise to the second *Warner* duty to disclose.
8        Plaintiffs also properly allege the third situation giving rise to a duty to disclose—where the
9  defendant actively conceals material information from the plaintiff. *Warner*, 2 Cal. 3d at 294.
10 Plaintiffs allege that JCPenney does not advertise the use of rhodium coating, either in print, on its
11 website or in the store. SAC ¶¶ 23, 23, 33. By alleging JCPenney's motivation for using, but not
12 disclosing, rhodium (i.e., making their jewelry be more desirable to consumers while expending
13 less money (SAC ¶¶ 16, 20, 25, 73)), Plaintiffs add depth to their claim of active concealment.
14 Indeed, even though they were interacting with JCPenney's sales staff in person, no information
15 about the rhodium coating was conveyed to Plaintiffs Torres and Rojas. SAC ¶¶ 21-23. Given
16 Plaintiffs' allegations of JCPenney's wide-spread use of rhodium coating, its knowledge of the
17 desirability of the bright, white shine, yet failure to disclose rhodium in any fashion to purchasers,
18 Plaintiffs adequately allege JCPenney's active concealment of the material information.
19       California's consumer protection statutes are considered full disclosure statutes,
20 purposefully including conduct such as that undertaken by JCPenney within their reach. *People ex.*
21 *rel. Dep't of Motor Vehicles v. Cars 4 Causes*, 139 Cal. App. 4th 1006, 1016 (2006) (advertised
22 promise to provide "free towing" was held to be actionable because it "does not disclose that the
23 cost of towing is deducted from the sales proceeds contributed to charity"). As such, JCPenney's
24 attempt to avoid liability either because the FTC regulations purportedly do not specifically outlaw
25 the undisclosed use of rhodium or because stamping Plaintiff's ring as "14kt white gold" might
26 technically be accurate must fail. A perfectly true statement may still have the effect of misleading
27 or deceiving the public. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006);
28 *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003). Because Plaintiffs properly

plead that the undisclosed use of rhodium is material, they have sufficiently alleged a duty to disclose. JCPenney's motion must be denied.

## V. PLAINTIFFS PROPERLY PLEAD EACH PRONG OF THE UCL

### A. The Court Already Upheld Plaintiffs' "Unfair" Claims

Plaintiffs' allegations of "unfair" business practices based on the undisclosed use of rhodium have already been upheld by the Court. Order at 6:24-25. Plaintiffs continue to plead the allegations the Court previously found sufficient. SAC ¶¶ 63-65, 68. JCPenney does not renew its attacks on these well-pleaded allegations, and instead rehashes its unmeritorious safe harbor argument. For the reasons discussed above, no safe harbor protects JCPenney's use of rhodium to alter the appearance of the fine jewelry it sells. As such, JCPenney's motion must be denied.

### B. The Validity of Plaintiffs' "Unlawful" Allegations is Beyond Dispute

JCPenney's arguments to dismiss Plaintiffs' claims of "unlawful" business practices are completely lacking in support .

First, as discussed in Section IV above, Plaintiffs adequately plead facts supporting several alternative theories establishing JCPenney's duty to disclose. Therefore, they sufficiently state their CLRA claims. As such, their claim of "unlawful business practices predicated on violations of the CLRA is sufficiently stated as well. *Collins*, 202 Cal. App. 4th at 258.

Second, JCPenney's argument that 15 U.S.C. Section 45(a) may not be used as a predicate statute for an unlawful violation because it does not itself permit a private right of action (Defs' Mem. at 20-21) is a misrepresentation of the law. Not only is it well-established that statutes without a private right of action may be a predicate for a UCL claim of " unlawful business practices" (*see, e.g., Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 573 (1998); *People v. McKale*, 25 Cal.3d 626, 633 (1979)), but it also is well-established that Section 45(a) itself may be used as a predicate statute for such a claim (*see, e.g.*, *Jordan v. Paul Financial, LLC*, 745 F. Supp.2d 1084, 1098 (N.D. Cal. 2010); *Baker v. Aegis Wholesale Corp.*, No. C-09-5280, 2010 WL 2853915, *8 (N.D. Cal. Jul. 21, 2010)).

1     JCPenney selectively quotes from *Kraus v. Trinity Management Services*, 23 Cal.4th 116,
2  132 (2000) to make it seem as though *Kraus* stands for the proposition that an "unlawful" claim
3  may not be based on a statute for which there is no private right of action. Defs' Mem. at 21:3-15.
4  However, the case does not support that proposition. The excerpts from *Kraus* on which JCPenney
5  relies related to the propriety of disgorgement into a fluid recovery fund in a representative UCL
6  action. *Id*., at 132. The *Kraus* court was simply responding to the (ultimately rejected) argument
7  that authority for such disgorgement could be inferred because it would complement Section 45.
8  No aspect of *Kraus* could be reasonably understood to bar use of Section 45 as a predicate statute
9  for a UCL claim of "unlawful business practices."

    JCPenney's further argument that because Section 45(n)'s test of "unfairness" is used as a guide for evaluating UCL claims of "**unfair**" business practices, Plaintiffs may not use it as a predicate for "**unlawful**" business practices claims (Defs' Mem. at 21-22), is a deductive fallacy. While the premise is true—courts do sometimes use the FTC test to evaluate UCL unfair claims— the conclusion is false. That courts take cues from the FTC's approach says nothing about whether violation of Section 45 is a proper predicate statute. JCPenney's flawed argument must be rejected.

### C. Plaintiffs' Claims Based on "Fraudulent" Conduct are Adequately Pleaded

JCPenney, again, relies on its safe harbor argument in urging this Court to dismiss Plaintiffs' claims under the UCL's "fraudulent businsess practices" prong. However, the FTC Guidelines do not permit JCPenney to conceal the use of a coating that disguises the actual appearance of the underlying metal. Thus, there is no safe harbor. The Guidelines carefully distinguish between the composition of jewelry articles and coatings applied to the surface of those articles. Thus, Plaintiffs' failure to allege that their jewelry is an inferior metal instead of the precious metal represented (i.e., a complaint about the **composition** of the jewelry) has no bearing on whether Plaintiffs can complain about JCPenney's deceptive use of rhodium (i.e., a complaint about **surface coating**).

What is required to be shown for a UCL "fraudulent" claim is that "members of the public are likely to be deceived." *Collins*, 202 Cal. App. 4th at 258. "In order to be deceived, members of

12

the public must have had an expectation or an assumption about" the matter in question. *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006). Here, Plaintiffs allege that color is often used to determine the value of jewelry (SAC ¶ 17); that consumers expect that jewelry described as white gets its brilliant white look from the precious metal (SAC ¶ 18); that over half of the respondents to recent, scientifically valid survey reported never having heard of rhodium (*id.*); and that 76% of respondents felt that it was extremely or very important to be told that rhodium had been used to enhance the color of white jewelry (*id.*). Plaintiffs also specifically plead that this information is material. SAC ¶ 42. These well-pleaded allegations sufficiently plead an expectation that makes JCPenney's advertisements and representations likely to deceive. *Collins*, 202 Cal. App. 4th at 258.

## VI. PLAINTIFFS' FAL CLAIM SHOULD GO FORWARD

In urging dismissal of Plaintiffs' FAL claim, JCPenney simply repeats one line summaries of each prior argument. Defs' Mem. at 24. Having refuted each argument, Plaintiffs will not repeat those arguments here. Suffice to say that no safe harbor protects JCPenney, Plaintiffs adequately allege a duty to disclose, and adequately allege that JCPenney's conduct is likely to deceive a reasonable consumer. Accordingly, their FAL claim should be upheld.

Bus. & Prof. Code § 17500 prohibits advertising that is "untrue or misleading". Plaintiffs do not allege a claim for "untrue" advertising under the FAL. Their FAL claim is premised on "misleading" advertising. SAC ¶ 78. This distinction is important because JCPenney's entire safe harbor argument is pirated from the Court's prior observation that "plaintiffs have not alleged facts sufficient to find that the jewelry sold did not in fact meet the requirements of the FTC Guides to be labeled as "14 carat gold" or "sterling silver," and thus was untruthful . . . . Under the facts pleaded, there is no indication that the jewelry purchased did not meet this requirement, even with the presence of rhodium." Order at 9:21-23. Without acknowledging that the Court's comments related solely to a an "untrue" claim under the FAL, JCPenney indiscriminately spreads the observation to concepts and claims to which it has no application, all the while chastising Plaintiffs for purportedly failing to follow the Court's prior order. *E.g.*, Defs' Mem. at 8:22, 8:27-28, 9:8-9, 13:13. Yet, just a few months ago, JCPenney, as a member of the Jewelers Vigilance Committee,

encouraged the FTC to declare it to be unfair and deceptive to fail to disclose the application of rhodium to the surface of products quality stamped or described as "white gold". SAC ¶¶ 19, 80. Plaintiffs should be permitted to go forward and prove that JCPenney's undisclosed use of rhodium is unfair and misleading, as JCPenney and the Jewelers Vigilance Committee themselves believe.

## VII.  CONCLUSION

For the foregoing reasons, JCPenney's motion should be denied in full.

Dated:  January 22, 2013

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP


        /s/ Jenelle Welling
                Jenelle Welling

2125 Oak Grove Road, Suite 120
Walnut Creek, California  94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

BAKER LAW PC
G. Richard Baker (SBN 224003)
524 Union Street, #213
San Francisco, CA  94133
415.295.4814 (telephone)
800.886.6556 (facsimile)
richard@bakerlawpc.com

MIANO LAW PC
Bert J. Miano (SBN 218934)
Post Office Box 59268
Birmingham, AL 35259
205.714.7199 (telephone)
205.714.7177 (facsimile)

Attorneys for Plaintiffs